| | |
|---|---|
| **CASSANDRA HUDSON,** | **Case No. _____** |
| **Plaintiff,** | **Hon.** |
| **v.** | **COMPLAINT AND JURY DEMAND** |
| **VELO LEGAL SERVICES, PLC, d/b/a VELO LAW OFFICE and SCOTT RENNER,** | |
| **Defendants.** | |

## CLASS ACTION COMPLAINT & JURY DEMAND

## INTRODUCTION

1.  Plaintiff, Cassandra Hudson ("HUDSON" or "PLAINTIFF") brings this action against Defendants Velo Legal Services, PLC d/b/a Velo Law Office and Scott Renner for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692, *et. seq.*, and similar state consumer protection statutes, which prohibit abusive, deceptive and unfair debt collection practices.

## JURISDICTION AND VENUE

2.  This Court has jurisdiction under 28 U.S.C. § 1331 (Federal Question), 28 U.S.C. § 1337 (supplemental jurisdiction over the state law claims) and 15

U.S.C. §1692k (FDCPA). This Court may exercise supplemental jurisdiction over the state law claims arising out of the same nucleus of operative facts.

3.      Venue and personal jurisdiction over Defendants in this District is proper because:

      a.      Plaintiff resides in the District; and

      b.      Defendants caused to be filed the subject violating state collection lawsuit filed against Plaintiff within a county located within the District; and

      c.      Defendants transact business within the District.

## PARTIES

4.      Plaintiff is a natural person who resides within a Michigan county located within the Eastern District of Michigan and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

5.      Plaintiff is a "consumer," "debtor" and "person" as the terms are defined and used in the MRCPA and MOC.

6.      Defendant Velo Legal Services, PLC d/b/a Velo Law Office ("VELO") is a Michigan Professional Limited Liability Company with its principal place of business in Kent County, Michigan.

7.      VELO's Michigan registered agent is Cascade Agent Solutions, LLC, 1740 Leonard St, NE, Grand Rapids, MI 49505.

8.    Scott Renner ("Renner") is an attorney and the sole member of Velo Legal Services, PLC.

9.    In *Heintz v. Jenkins*, 514 U.S. at 299, 115 S.Ct. 1489, 131 L.Ed.2d 395, the United States Supreme Court made clear that the FDCPA applies to "attorneys who 'regularly' engage in consumer-debt-collection activity, even when that activity consists of litigation." *See also Beler v. Blatt, Hasenmiller, Leibsker & Moore, L.L.C.*, 480 F.3d 470, 472 (7th Cir.2007).

10.   A shareholder, owner, officer, member, manager, employee or agent of a corporate debt collector can be held liable for violating the FDCPA, without piercing the corporate veil, by being directly involved in the day-to-day operation of the company, including the training and managing of employees, reviewing or supervising the review of accounts, materially participating in the activities of the company, supervising collection activities, overseeing compliance with applicable collection laws, ratifying unlawful acts, and the like, for the reason that each such individual is himself a "debt collector" within the statutory definition, namely, each is a "person" in a business, "the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. 1692a(6). *See Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433,435-438 (6th Cir.

2008); *Russell v. Goldman Roth Acquisitions, LLC*, 847 F.Supp.2d 994,1004-06 (W.D.Mich. 2012).

11. During all times pertinent hereto, Renner directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Plaintiff that are described in this complaint in violation of state and federal law.

12. Renner is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

13. VELO regularly files state court lawsuits seeking to collect a debt that is in default at the time of the filing of the lawsuit on behalf of its clients and therefore is a debt collectors. *See Heintz v. Jenkins,* 514 U.S. 291, 299 (1995).

14. During all times pertinent hereto, VELO and Renner directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Plaintiff that are described in this complaint in violation of state and federal law.

15. VELO and Renner are a "debt collectors" as that term is defined by 15 U.S.C. § 1692a(6).

16. In *Heintz,* 514 U.S. at 294, 115 S.Ct. 1489, 131 L.Ed.2d 395, the United States Supreme Court also held that the FDCPA "applies to the litigating activities of lawyers." Relying on that holding, federal "circuit courts have

widely recognized that litigation-related conduct, including the filing of formal complaints, can give rise to claims under the Act." *Lipscomb v. The Raddatz Law Firm, P.L.L.C.*, 109 F.Supp.3d 251, 260 (D.D.C.2015).

17.  The MRCPA, MCL 445.251 et seq. is an act to regulate the collection practices of certain persons; to provide for the powers and duties of certain state agencies; and to provide penalties and civil fines.

18.  Defendants are covered under the MRCPA pursuant to *Misleh v. Timothy E. Baxter & Assoc.*, 786 F Supp 2d 1330 (E.D. Mich 2011).

19.  The MRCPA mirrors the requirements and remedies of the FDCPA with the same 6th Circuit use of the "least sophisticated consumer" standard. *McKeown v. Mary Jane M. Elliott P.C.,* No. 07–12016–BC, 2007 WL 4326825, at *5 (E.D.Mich. Dec. 10, 2007) (citing *Hubbard v. Nat'l Bond and Collection Assocs., Inc.,* 126 B.R. 422, 426 (D.Del.1991)) held that "§ 445.252(e) applies to Defendant, its analysis is similar to that under § 1692e of the FDCPA, both of which bar misleading and deceptive communications… In light of the similarity between 15 U.S.C. § 1692e 15 U.S.C. § 1692g and these causes of action, it appears appropriate to view Plaintiff's claims under the same "least sophisticated consumer" standard.

20.  Defendants are "regulated persons" as the term is defined and used in the MRCPA.

## STATEMENT OF FACTS

21.     In February 2014, Plaintiff entered into lease agreement with Sun Home Services, Inc. d/b/a Sun Homes (hereinafter "Sun Homes") to lease and occupy a manufactured home.

22.     Therefore, Plaintiff incurred a financial obligation to Sun Homes (the "Creditor"), which she used to finance and/or purchase consumer goods.

23.     In October 2014, Plaintiff decided to move.

24.     Prior to moving out, Plaintiff spoke with Julie Nim, Sun Homes's office manager, who agreed and advised Plaintiff that if Plaintiff Hudson cleaned up the residence and moved out before November 1st and did not request a return of her rental deposit of $1099.00, that Sun Homes would accept these terms as payment in full and Plaintiff would have no further obligation under the lease.

25.     Julie Nim in her capacity as Sun Homes' office manager had actual or apparent authority to orally modify the written lease upon acceptance of this additional consideration.

26.     Plaintiff completed performance of the lease agreement as modified orally and moved out of the Mobile Home on October 31, 2014 after cleaning the unit and waiving her right to request her security deposit back.

27.     Before leaving, Plaintiff provided Sun Homes her forwarding address in writing on 16362 Linden Road, Linden MI 48451 along with the keys to the mobile home unit in the Sun Homes drop box.

28.     The home was re-leased on or about early December 2014.

29.     In July of 2015, Sun Home's leasing manager at Plaintiff's request, provided Plaintiff with a copy of her rental ledger which showed a zero balance.

30.     At no time prior to this did Sun Homes advise plaintiff that she owed a balance or make any effort to seek recovery of outstanding lease payments.

31.     On or about August 15, 2016 Defendants, on behalf of Sun Homes, filed a collection lawsuit in the 67-2 Judicial District Court ("Complaint") seeking to collect an amount from Plaintiff allegedly due under the terms of her lease with Sun Homes. (hereinafter the "Debt")

32.     The Debt arose from a transaction with the Creditor, which was primarily for family, personal or household purposes and which meets the definition of a "debt" under 15 U.S.C. § 1692a(5).

33.     The paperwork served on Plaintiff included a Summons and a "Defendant Copy" of the Complaint.

34. A copy of the Complaint served on Plaintiff and all of the attachments is attached hereto as Exhibit 1. This Complaint included an "Affidavit of Account".

35. Included in the Affidavit of Account was a "Disclosure and Notices" providing Plaintiff with statutory validation and dispute rights to dispute the debt and/or seek verification of the debt.

36. The Disclosure and Notices stated in part that "Unless you notice this office within 30 days after receiving this notice that you dispute the validity of the debt or any portion thereof, this office will assume the debt is valid."

37. The Complaint claimed that Plaintiff owed Defendant $2,773.91 plus interest in the amount of $327.17, for a total balance of $3,101.08 due.

38. The Affidavit of Account stated that Plaintiff owed $2,773.91 plus interest in the amount of $327.17.

39. The Affidavit of Account stated that "the annexed statement of account is/are a true and correct statement of what is now due and owing to the Plaintiff" (Sun Homes) . . ."

40. The statement of account annexed to the Affidavit of Account stated that Plaintiff owed Sun Homes $2,773.91 plus interest in the amount of $327.17, for a total balance of $3,101.08 due.

41.  The Complaint also alleges that Sun Homes is entitled to "statutory attorney fees/taxable costs."

42.  The interest charged by Defendants and added to the state complaint was not authorized by contract or law.

43.  Alternatively, the interest charged by Defendants violated state civil usury laws.

44.  Inexplicably, Defendants caused to be filed with the Court a Complaint which differed from the Complaint served on Plaintiff (the "Court Complaint")

45.  A true and correct copy of the Court Complaint is attached hereto as Exhibit 2.

46.  The Court Complaint claimed that Plaintiff owed Defendant $2,224.41 plus interest in the amount of $334.04, for a total balance of $2,558.45 due.

47.  The Affidavit of Account attached to the Court Complaint stated that Plaintiff owed $2,224.41 plus interest in the amount of $334.04.

48.  Included in the Affidavit of Account was a "Disclosure and Notices" providing Plaintiff with certain validation and dispute rights to dispute the debt or seek verification of the debt.

49.   The Disclosure and Notices stated in part that "Unless you notice his office within 30 days after receiving this notice that you dispute the validity of the debt or any portion thereof, this office will assume the debt is valid."

50.   The Affidavit of Account attached to the Court Complaint stated that "the annexed statement of account is/are a true and correct statement of what is now due and owing to the Plaintiff" (Sun Homes) . . ."

51.   The statement of account annexed to the Affidavit of Account attached to the Court Complaint stated that Plaintiff owed Sun Homes $2,224.41 plus interest in the amount of $334.04, for a total balance of $2,558.45 due.

52.   The Court Complaint also alleges that Sun Homes is entitled to "statutory attorney fees/taxable costs."

53.   The interest charged by Sun Homes as referenced in the Complaints was not authorized by the lease from which the Debt arose. (See Exhibit 3 – lease agreement).

54.   The interest charged by Sun Homes as referenced in the Complaints was not authorized by any agreement between Sun Homes and Plaintiff.

55.   The interest charged by Sun Homes as referenced in the Complaints was not authorized by any applicable law.

56.   Alternatively the interest charged by Sun Homes as referenced in the Complaints violated civil usury laws.

57.  Sun Homes is not entitled to any statutory attorney fees.

58.  Pursuant to the Michigan Court Rules, depending on whether Plaintiff was served with the Complaint by mail or in person, Plaintiff would only have either 21 days or 28 days to "file a written answer with the court" or "take other lawful action with the court" as set forth in Summons served on Plaintiff. (See Exhibit 1, Summons at ¶ 2).

59.  Plaintiff was personally served with the Complaint, thus she had only 21 days to respond to it.

60.  Defendants inclusion of the Disclosure and Notices is misleading, deceptive, confusing and conflicting  as it would cause the least sophisticated consumer to assume they had 30 days to respond to the lawsuit and/or 30 days to dispute the debt with Defendants and thereby fail to comply with the Summons and the Michigan Court Rules.

61.  Defendants inclusion of the Disclosure and Notices was:

 "simply improper in its entirety at this stage of the proceedings, as the failure to dispute the debt will have no impact on the court case. Its presence in the complaint serves no purpose … its function in the complaint is only to mislead."  (See Erick Marquez et al. v. Weinstein, Pinson & Riley, PS et al., case number 15-3273 in the U.S. Court of Appeals for the Seventh Circuit.) (September 7, 2016).

62.  Defendants included the Disclosure and Notices to mislead and confuse consumers.

63. The Disclosure and Notices contradicts the Summons and is misleading in that it indicates that the only option open to the consumer is to dispute the debt, instead of challenging the sufficiency of the pleading, the right of the collection Plaintiff to enforce any claimed debt, the sufficiency of service, and similar matters.

64. By serving Plaintiff with a Complaint that demanded a higher amount than the Complaint filed with the Court, Defendants falsely represented the amount of the Debt.

65. The Complaints in tandem falsely represented the amount owed as Plaintiff did not owe the debt at issue.

66. The Complaints in tandem falsely represented the amount owed as Defendant illegally added interest to which it was not entitled.

67. Defendants illegally created two different Affidavit of Accounts one served on the plaintiff and a different one filed with the court.

68. The effect whether intended or not was to confuse or mislead the consumer.

69. Defendants' affiant had not reviewed Sun Homes' business records corroborating the alleged debt.

70. Defendants' affiant robo signed affidavits in violation of the Consumer Protection Financial Bureau's prohibition on signing affidavits, unless the

statements contained in the affidavits specifically and accurately describe the signer's knowledge of the facts and the documents attached.

71.   Both state court Complaints falsely state that Plaintiff is indebted on an account in different amounts.

72.   Both conflicting affidavits of Accounts were prepared by VELO and / or Renner as stated on the record, to Judge Manley by collection attorney Stephanie Goecke, in the 67 District Court on November 29, 2016 (20:2-5 - TR of 67th District court hearing on November 29, 2016).

73.   Attorney Stephanie Goecke represented to the state court judge that she was a *member* of the Velo law firm. (7:7 - TR of 67th District court hearing on November 29, 2016).

74.   It appears however, that Stephanie Goecke has her own law firm entitled Stephanie T Goecke PLLC operating out of Plymouth Michigan and is nothing more than a contract lawyer used by VELO / Renner to cover Renner's appearances and should have so disclosed to the state court judge. (See State Bar of Michigan – Member directory).

75.   After early termination of the lease, Plaintiff never received a billing statement or account stated from either Sun Homes or VELO / Renner except for that attached to the collection complaint served upon her.

76. Plaintiff never received any written notification from Defendants prior to being served with the collection Complaint.

77. VELO / Renner's two state court collection complaints also named a co-defendant, Jesse J Odell in addition to naming Cassandra Hudson as defendant.

78. Sun Home's lease expressly provides for joint and several liability between co-tenants and signatories on lease. (See Exhibit 3 – lease agreement pg 4 of 5).

79. Both of VELO / Renner's collection complaints seek a full damage award from both Defendants without any allegations to joint and several liability specified within the complaints or demands for relief.

80. VELO / Renner improperly sought double recovery to which it was not entitled by failing to allege joint and several liability within its complaint and request for relief.

81. The omission of joint and several liability allegations misleads the state court to award two separate judgements for the full amount against two defendants without reference to joint and several liability thus obligating both defendants to pay the full relief requested.

82.   The omission of joint and several liability allegations potentially doubles the relief and recovery sought by the creditor and its attorneys in their collection lawsuits.

83.   Plaintiffs' Complaints falsely represent the amount of the Debt.

84.   Plaintiffs' Complaint are deceptive and misleading with respect to Plaintiffs' rights under 15 USC 1692g.

85.   Defendants never provided Plaintiff with a notice as required by 15 USC 1692g prior to suing Plaintiff.

86.   Defendants violated black letter law under the Fair Debt Collection Practices Act (FDCPA) by failing to provide written notice required by 15 USC § 1692g(3).

87.   Federal law requires a debt collector, debt buyer and debt collection lawyers to provide notice to a consumer that the consumer owes a debt.

88.   This provision "significant feature" gives the consumer the right to obtain verification that the debt is owed from the collector.

89.   Congress when drafting the FDCPA intended that 15 USC § 1692g(3), minimize the instances of mistaken identity of the debtor, or mistakes over the amount or existence of a debt or similar errors.1

---

1 "This provision will eliminate the recurring problem of collectors dunning the wrong person or attempting to collect debts which the consumer has already paid." S. Rep. No. 382, 95th Cong., 1st Sess. 4, at, reprinted 1977 U.S..C.C.A.N. 1695, 1696 and reprinted at Appx. A.3., infra.  See Jacobson v. Healthcare Fin. Serv., Inc., 516 F.3d 85 (2d Cir. 2008).  See also Udell, FTC Informal Staff Letter (Jan. 20, 1987)

90. Defendants never sent a written "g" notice about this debt, informing Plaintiff of who the original creditor was or what her rights were in disputing the debt.

91. As a direct and proximate result, Plaintiff was forced to hire legal counsel to assist her in defending a collection lawsuit.

92. Defendant's failure to provide the "g" precluded Plaintiff of exercising her statutory right to require Defendants to substantiate that Plaintiff owed the debt in the amount alleged instead of forcing her to litigate this issue.

93. As an actual and proximate result of the acts and omissions of Defendants and their employees and agents, Plaintiff has suffered actual damages and injury, including but not limited to, monetary loss, fear, stress, mental anguish, emotional stress, embarrassment, humiliation, and anxiety and legal fees.

## COUNT I - FDCPA

94. Plaintiff incorporates the preceding allegations by reference.

95. The foregoing acts and omissions of Defendants constitute violations of the FDCPA including, but not limited to, each and every one of the below cited provisions of the FDCPA, 15 U.S.C. § 1692 et seq.

    a. § 1692d. Any conduct the natural consequence of which is to

harass, oppress, or abuse any person in violation of 15 U.S.C. § 1692d;

b. by falsely representing the character, amount, or legal status of any debt by attempting to make Plaintiff pay more than which was legally owed in violation of 15 U.S.C. §1692e(2);

c. The threat to take action that cannot be legally taken in violation of 15 U.S.C. § 1692e(5);

d. The utilization of false and deceptive means to collect or to attempt to collect a debt in violation of 15 U.S.C. § 1692(e)(10);

e. Any other false, deceptive, or misleading representation or means in connection with the debt collection in violation of 15 U.S.C. § 1692(e).

f. The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law in violation of 15 U.S.C. § 1692f(1);

g. By using unfair or unconscionable means to collect the debt in violation of 15 U.S.C. §1692f;

h. Failing to comply with the requirements of 15 U.S.C. § 1692g.

96. Because of Defendants' violations of the FDCPA, Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 each pursuant to 15 U.S.C. § 1692k(a)(2)(A); and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3).

## COUNT II - The Michigan Regulation of Collection Practices Act

97.   Plaintiff incorporates the preceding allegations by reference.

98.   Defendants and its employee/agents, are "regulated persons" as defined by MCL 445.251(g) (x), (xi) in the, MCL 445.251, et seq., i.e. the Michigan Regulation of Collection Practices Act.

99. Plaintiff is a person whom the act was intended to protect, MCL 445.251(d).

100. Defendants' foregoing acts in attempting to collect this debt against Plaintiff constitute violations of the Michigan Regulation of Collections Practices Act, including, but not limited to the following provisions of the Michigan Regulation of Collection Practices Act, MCL 445.252:

   (a)   Communicating with a debtor in a misleading or deceptive manner, ....

   (e)   Making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt ….

   (f)   Misrepresenting in a communication with a debtor 1 or more of the following:

      (i)   The legal status of a legal action being taken or threatened.
      (ii)   The legal rights of the creditor or debtor.

   (n)   Using a harassing, oppressive, or abusive method to collect a debt, ….

   (q)   Failing to implement a procedure designed to prevent a violation by an employee.

101. Plaintiff has suffered damages as a result of these willful violations of the Michigan Regulation of Collections Practices Act.

102. In defending the state court matter, Plaintiff incurred out of pocket actual damages in legal fees as well as frustration, emotional distress, worry, anxiety and other actual damages warranting exemplary or treble damages as provided under the state law remedies pled herein.

## COUNT III - Class action allegations pursuant to the Michigan Regulation of Collection Practices Act (MRCPA)

103. Plaintiff incorporates all previous allegations pled herein.

104. The MRCPA class consists of:  All individuals whom were sued by VELO and / or Renner, in Michigan on a debt filed in a Michigan state court requesting interest that was not permitted by contract or state law where the collection action was filed during a time period from the filing of this class action lawsuit to six years prior to the filing.

105. On information and belief, the class is so numerous that joinder of all members is impractical.  Plaintiff alleges on information and belief that there are more than 40 members of the class above.

106.  If it is determined that there are more than 40 consumers against whom VELO and / or Renner filed a collection lawsuit seeking interest not authorized by contract or law in the state of Michigan during the six years

prior to this action being filed, Plaintiff places VELO and / or Renner along with potential class members on notice and expressly reserves for the purpose of relation back to the original date of the filing of this Complaint the ability to add the above as a class allegation against VELO and / or Renner. *See generally Sokolski v. TransUnion Corp.,* 178 F.R. D. 393 (E.E.N.Y. 1998); *Navarro v Eskanos & Adler,* No., C 06-02231 WHA, 2006 U.S. Dist. LEXIS 90880 *9-10 (N.D. Cal. Dec. 7, 2006).

107. There are questions of law and fact common to the class that predominate over any questions affecting only individual class members. The predominant common question is whether Plaintiff and the class members were sued for interest not provided for by contract or state law.

108. Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained legal counsel experienced in handling class actions brought under the MRCPA.

109. A class action is an appropriate method for the fair and efficient adjudication of this controversy.

## JURY DEMAND

110. Plaintiff demands a trial by jury.

**WHEREFORE,** Plaintiff requests this Honorable court to enter judgment for Plaintiff and against Defendants for:

a.  Actual damages for items including emotional distress, mental anguish, and frustration.

b.  Statutory damages.

c.  Treble damages as provided for under the state laws cited herein.

d.  Statutory costs and attorney fees.

e.  Equitable relief for the class pursuant to MCL 445.257(1) in the form of an injunction prohibiting Defendants from filing lawsuits attempting to collect any amount not authorized by the agreement creating the debt or permitted by law.

f.  Such other or further relief as this Court deems proper.


Dated: February 3, 2017                    Respectfully Submitted,


REX ANDERSON, PC

*/s/ Rex C Anderson*
Rex C. Anderson (P47068)
Attorney for Plaintiff
9459 Lapeer Rd. Ste. 101
Davison MI 48423
(810) 653-3300
rex@rexandersonpc.net

Curtis C. Warner (P59915)

Attorney for Plaintiff
350 S. Northwest Hwy., Ste. 300
Park Ridge, IL 60068
(847) 701-5290
cwarner@warner.legal